UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
DONATO ROSALES MEDINA, individually :
and on behalf of others similarly situated,

                Plaintiff,

        -against-

TACO MIX LLC. (d/b/a TACO MIX),
JORGE SANCHEZ (A.K.A. LIDONES
SANCHEZ), ALEJO SANCHEZ and
JAVIER FLORES,

                Defendants.
------------------------------------------------------------X

**REPORT AND RECOMMENDATION**

17-CV-5637 (RA) (KNF)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/25/19

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE RONNIE ABRAMS, UNITED STATES DISTRICT JUDGE

## INTRODUCTION

Donato Rosales Medina commenced this action against Taco Mix LLC, Jorge Sanchez, Alejo Sanchez and Javier Flores for unpaid wages and overtime compensation under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, and New York Labor Law ("NYLL"), §§ 190-199-a. The plaintiff alleges that the defendants failed to: (1) pay the minimum wage; (2) pay compensation for overtime work; (3) pay the spread-of-hours wages under New York law; (4) provide notice of his rate of pay and other information as required by NYLL; and (5) provide the wage statements, as required by NYLL. On June 29, 2018, the plaintiff's motion for judgment by default was granted and the matter referred to the undersigned for an inquest on damages.

1

**PLAINTIFF'S INQUEST SUBMISSIONS**

The plaintiff states in his affidavit that he was employed as a cook in the defendants' restaurant, from approximately July 19, 2016, until June 23, 2017, except for one week in October 2016, and three days in May 2017. The plaintiff's regular work schedule was from 7:00 p.m. to 7:00 a.m., six days per week; thus, the plaintiff worked typically 72 hours per week. The plaintiff was paid $700 weekly, "except for four or five weeks when [he] was paid $740 without any explanation of why [he] received additional pay." The plaintiff states that, on some days, he worked an additional 10 to 15 minutes beyond his usual schedule but his weekly pay amount remained the same. The plaintiff did not receive overtime compensation, spread-of-hours compensation, notices of his pay rate or wage statements.

The plaintiff's attorney, Joshua S. Androphy ("Androphy"), states in his declaration that: (a) Exhibit J to his declaration contains a spreadsheet indicating plaintiff's damages calculations; and (b) Exhibit K to his declaration contains the attorneys' time records and costs. The plaintiff seeks: (1) $38,880, in overtime compensation; (2) $2,772, in spread-of-hours compensation; (3) liquidated damages equaling overtime compensation and spread-of-hours compensation; (4) $5,000, statutory damages for failure to provide wage notices; (5) $5,000, statutory damages for failure to provide wage statements; (6) $5,035, in attorneys' fees; and (7) $600, in costs.

Exhibit J indicates that the plaintiff worked 72 hours per week in each of the following time periods: (i) 22 weeks, from July 19, 2016, to December 30, 2016 (minimum wage in effect was $9); (ii) 5 weeks, from December 31, 2016, to February 5, 2017 (minimum wage in effect was $11); and (iii) 19 weeks, from February 6, 2017, to June 23, 2017 (minimum wage in effect was 11). The plaintiff worked six spread-of-hours days per week in each week during the three time periods. The plaintiff's regular rate of pay was calculated by dividing the weekly amount

paid by 40 hours, resulting in $17.50 as the regular rate of pay for the weeks in which the plaintiff was paid $700 and $18.50 as the regular rate of pay for the weeks in which the plaintiff was paid $740. The overtime rate was calculated by multiplying the plaintiff's regular rate of pay by one-and-a-half times, resulting in $26.25 as the overtime rate of pay for the weeks in which the plaintiff was paid $700 and $27.75 as the overtime rate of pay for the weeks in which the plaintiff was paid $740. The resulting unpaid overtime compensation requested by the plaintiff is $38,880, consisting of: (a) $18,480, for the 22-week period; (b) $4,440, for the 5-week period; and (c) $15,960, for the 19-week period. The plaintiff's spread-of-hours compensation was calculated by multiplying the six days per week in which the plaintiff worked more than 10 hours with the minimum wage in effect during the three time periods ($9 for the period July 9, 2016, to December 30, 2016, and $11 for the period December 31, 2016, to June 23, 2017) resulting in $2,772, consisting of: (i) $1,188, for the 22-week period; (ii) $330, for the 5-week period; and (iii) $1,254, for the 19-week period.

Exhibit K indicates that the plaintiff's attorneys, Androphy and Michael Faillace ("Faillace"), spent 12.30 hours on this matter consisting of 4.7 hours by Faillace and 7.6 hours by Androphy. Androphy states that his litigation experience commenced in 2005, the same year he graduated from Columbia Law School, and his hourly rate for the work not performed on a contingency basis is $400. Androphy practiced commercial and employment litigation with the law firm Olshan Frome Wolosky LLP and joined Michael Faillace & Associates, P.C. in December 2012, where his practice is, exclusively, wage and hour employment litigation. Androphy has been named a Super Lawyer Rising Star for plaintiff's side employment litigation in 2014, 2015, 2016, 2017 and 2018.

Androphy states that Faillace is the managing partner of his law firm, has been in practice since 1983, and charges an hourly rate of $450. From 1983 to 2000, Faillace was in-house employment counsel with the International Business Machines Corporation. Beginning with 1992, Faillace taught employment discrimination law as an adjunct professor at Fordham University School of Law and did so at Seton Hall University Law School from 1995 to 1998. Faillace is the author of the ADA, Disability Law Deskbook: The Americans with Disabilities Act in the Workplace and he is a nationally-renowned speaker and writer on employment law. The total amount of attorney's fees is $5,035. The total amount of costs is $600, consisting of a $400 filing fee and a $200 process server fee.

## LEGAL STANDARD

"Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true. The district court must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999). It is "not necessary for the District Court to hold a hearing, as long as it ensured that there was a basis for the damages specified in a default judgment." Fustok v. Conticommodity Services, Inc., 873 F.2d 38, 40 (2d Cir. 1989). Establishing the appropriate amount of damages involves two steps: (1) "determining the proper rule for calculating damages on . . . a claim"; and (2) "assessing plaintiff's evidence supporting the damages to be determined under this rule." Credit Lyonnais Sec. (USA), Inc., 183 F.3d at 155. When assessing damages, a court cannot "just accept [the plaintiff's] statement of the damages"; rather, damages must be established "with reasonable certainty." Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc., 109 F.3d 105, 111 (2d Cir. 1997).

## *FLSA*

> Every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages . . . not less than . . . $7.25 an hour.

29 U.S.C. § 206(a)(1)(C).

> [N]o employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1).

"The regular rate of pay at which the employee is employed may in no event be less than the statutory minimum." 29 C.F.R. § 778.107. "The 'regular rate' under the Act is a rate per hour," unless an employee's earnings are determined on another basis. 29 C.F.R. § 778.109. "The regular hourly rate of pay of an employee is determined by dividing his total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid." 29 C.F.R. § 778.109. The "regular rate" of pay is "the hourly rate actually paid the employee for the normal, nonovertime workweek for which he is employed." 29 C.F.R. § 778.108. "Any employer who violates the provisions of section 206 or section 207 of [the FLSA] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). "[I]n addition to any judgment awarded to the plaintiff or

5

plaintiffs," the court shall "allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b).

### *NYLL*

The Minimum Wage Order for Hospitality Industry, issued by the Commissioner of Labor, provides that the basic minimum hourly wage rate is $9 per hour, on and after December 31, 2015. See New York Compilation of Codes, Rules and Regulations ("NYCRR") Title 12 § 146-1.2(a)(4) (Effective December 31, 2015). Effective December 31, 2016, the minimum hourly wage rate became $11 for large employers of eleven or more employees and $10.50 for small employers of ten or fewer employees. See 12 NYCRR § 146-1.2(a)(1). "An employer shall pay an employee for overtime at a wage rate of 1 1/2 times the employee's regular rate for hours worked in excess of 40 hours in one workweek." 12 NYCRR § 146-1.4. "The spread of hours is the length of the interval between the beginning and end of an employee's workday." 12 NYCRR § 146-1.6. "On each day on which the spread of hours exceeds 10, an employee shall receive one additional hour of pay at the basic minimum hourly rate." 12 NYCRR § 146-1.6(a). "The term regular rate shall mean the amount that the employee is regularly paid for each hour of work, before subtracting a tip, if any. 12 NYCRR § 146-3.5(a).

> If an employer fails to pay an employee an hourly rate of pay, the employee's regular hourly rate of pay shall be calculated by dividing the employee's total weekly earnings, not including from the regular rate, by the lesser of 40 hours or the actual number of hours worked by that employee during the work week.

12 NYCRR § 146-3.5(b).

NYLL requires every employer to provide written notices of, inter alia, the rate of pay and the basis thereof, whether paid by the hour or otherwise and any allowances, as well as statements, "with every payment of wages, listing," inter alia, the dates of work covered by that payment of

wages and the rate of pay and basis thereof. NYLL §§ 195(1) and (3). A plaintiff is permitted to recover for the employer's failure to provide required notices damages not exceeding $5,000 under each of NYLL §§ 195(1) and (3). See NYLL §§ 198(1-b) and (1-d). Plaintiffs asserting unpaid wages claims under the FLSA and NYLL are not allowed "duplicative liquidated damages for the same course of conduct." Rana v. Islam, 887 F.3d 118, 123 (2d Cir. 2018).

### *Attorney's Fees*

When exercising their discretion to determine the reasonableness of the attorney's fees sought in an action based on a federal question, courts in this Circuit use the "presumptively reasonable fee" standard. Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 190 (2d Cir. 2008). The presumptively reasonable fee, also known as the lodestar, is "the product of a reasonable hourly rate and the reasonable number of hours required by the case." Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011). In calculating the presumptively reasonable fee, a district court must consider, among others, the twelve factors articulated in Johnson v. Ga. Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974). See Arbor Hill Concerned Citizens Neighborhood Ass'n, 522 F.3d at 190. Those factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Id. at 186-87 n.3.

A reasonable hourly rate is "the rate prevailing in the [relevant] community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Farbotko v. Clinton Cty. of N.Y., 433 F.3d 204, 208 (2d Cir. 2005) (quoting Blum v. Stenson, 465 U.S. 886, 896 n.11,

104 S. Ct. 1541, 1547 n.11 (1984)). "Thus, 'a reasonable hourly rate' is not ordinarily ascertained simply by reference to rates awarded in prior cases." Id. "[T]he equation in the caselaw of a 'reasonable hourly fee' with the 'prevailing market rate' contemplates a case-specific inquiry into the prevailing market rates for counsel of similar experience and skill to the fee applicant's counsel. This may, of course, include judicial notice of the rates awarded in prior cases and the court's own familiarity with the rates prevailing in the district." Id. at 209. "[T]he fee applicant has the burden of showing by 'satisfactory evidence—in addition to the attorney's own affidavits'—that the requested hourly rates are the prevailing market rates." Id. (quoting Blum, 465 U.S. at 896 n.11, 104 S. Ct. 1547 n.11). A fee application that is not supported by evidence of "contemporaneous time records indicating, for each attorney, the date, the hours expended, and the nature of the work done" should normally be denied. New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1154 (2d Cir. 1983).

## APPLICATION OF LEGAL STANDARD

*Unpaid Overtime and Spread-of-Hours Compensation*

No evidence exists in the plaintiff's inquest submissions that the "four or five weeks when [the plaintiff] was paid $740" per week occurred, as the plaintiff claims in his calculation of damages, Exhibit J, during the time period between December 31, 2016, and February 5, 2017. No allegation was made in the complaint and no evidence exists in the plaintiff's inquest submissions identifying the size of the plaintiff's employer for the purpose of establishing the minimum hourly wage rate, which the plaintiff claims in his calculation of damages, Exhibit J, was $11 during the 5-week and 19-week periods, commencing on December 31, 2016. Commencing on December 31, 2016, $11 was the minimum hourly wage rate for employees of large employers of eleven or more employees, while $10.50 was the minimum hourly wage rate

8

for employees of small employers of ten or fewer persons. It appears that the plaintiff relied, in calculating damages, on the minimum hourly wage rate of $11 required to be paid by large employers, without evidentiary support. However, the plaintiff used the minimum hourly wage rates to calculate spread-of-hours damages and the difference between using the minimum hourly wage rates of $9, $10.50 and $11 to calculate spread-of-hours compensation is negligible and does not affect materially the certainty of the overall calculation of the amount of damages.

The Court has reviewed the plaintiff's calculations and finds that the plaintiff established, with reasonable certainty, that he is entitled to damages in the amount of $83,304, consisting of: (1) $38,880, in unpaid overtime compensation; (2) $38,880, in liquidated damages, based on the unpaid overtime compensation; (3) $2,772, in spread-of hours compensation; and (3) $2,772, in liquidated damages, based on the unpaid spread-of-hours compensation.

*Notices Violations*

The plaintiff established that he is entitled to the maximum statutory amount of $10,000 for the defendants' violations of New York's mandatory notices provisions, consisting of: (i) $5,000, under NYLL §198(1-b); and (ii) $5,000, under NYLL § 198(1-d).

*Attorney's Fees and Costs*

The time and labor required in this action was basic and minimal. This case does not involve any novel or difficult questions; on the contrary, it involves a simple claim for unpaid overtime and spread-of-hours compensation and notice requirements violations, based on a short period of employment: less than one year. The plaintiff's inquest documents, although styled differently, contain almost identical content; thus, no significant time was needed to prepare them. The level of skill required to perform the legal services properly in this action is basic. Although Androphy did not include in his declaration any information about the Johnson factors,

9

except information about his and Faillace's experience and reputation, and the plaintiff failed to make citation to attorney fee awards in similar cases, the Court finds, based on the information provided and its own familiarity with the rates for legal services prevailing in this district, that: (1) Androphy's hourly rate of $400, and Faillace's hourly rate of $450 are reasonable; (2) 12.30, the number of hours expended on this matter, are reasonable; and (3) $600, in costs, are reasonable.

## RECOMMENDATION

For the foregoing reasons, I recommend that the following damages be awarded to the plaintiff: (1) $93,304, in unpaid overtime, spread-of-hours, notice violations and liquidated damages; and (2) $5,635, in attorney's fees and costs.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable J. Ronnie Abrams, 40 Centre Street, Room 2203, New York, New York, 10007, and to the chambers of the undersigned, 40 Centre Street, Room 425, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Abrams. ***Failure to file objections within fourteen (14) days will result in a waiver of objections and will***

*preclude appellate review.* See Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); Cephas v. Nash, 328 F.3d 98, 107 (2d Cir. 2003).

Dated: New York, New York  
       February 25, 2019

Respectfully submitted,

*/s/ Kevin Nathaniel Fox*  
KEVIN NATHANIEL FOX  
UNITED STATES MAGISTRATE JUDGE